UNITED STATES of America,
Plaintiff–Appellee,

v.

Ricardo RODRIGUEZ,
Defendant–Appellant.

No. 88–6020
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 29, 1990.

Nathan L. Bond, Tallahassee, Fla. (court-appointed), for defendant-appellant.

Kathlyn G. Snyder, Paula C. Offenhauser, Asst. U.S. Attys., Houston, Tex., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before HIGGINBOTHAM, DAVIS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Following his plea of guilty on July 17, 1988, Ricardo Rodriguez was convicted of possessing with intent to distribute approximately three kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. As the crime occurred on or after November 1, 1987, he was sentenced under the federal sentencing guidelines.

At the sentencing hearing the district court adopted the presentence investigation report (PSI) as written. The amount of cocaine involved placed the base offense level at 28. The court, following the PSI, next added four levels for the defendant's leadership role in the offense and then subtracted two levels for his acceptance of responsibility. For a category I offender, such as the defendant, with an offense level of 30, the guidelines provide for a sentence range of 97 to 121 months.

As part of the plea bargain, the prosecutor had agreed to recommend a sentence at the low end of the sentencing range. The district court expressly followed this recommendation and sentenced defendant to 97 months' imprisonment followed by a term of supervised release. On appeal, defendant challenges only the district court's finding that he had a leadership role in the offense.

I.

The district court's decision to increase defendant's offense level by four (pursuant to Guidelines § 3B1.1) for defendant's aggravating role in the cocaine transaction is a finding of fact that we review only for clear error. *See United States v. Davis*, 868 F.2d 1390, 1391 (5th Cir.1989). The commentary to section 3B1.1 suggests that a court consider the following factors in determining whether the defendant was an organizer, leader, manager, or supervisor:

(1) The exercise of decision-making authority;

(2) The nature of participation in the commission of the offense;

(3) The recruitment of accomplices;

(4) The claimed right to a larger share of the fruits of the crime;

(5) The degree of participation in planning or organizing the offense;

(6) The nature and scope of the illegal activity; and

(7) The degree of control and authority exercised over others.

*See also United States v. Barreto,* 871 F.2d 511, 512 (5th Cir.1989). While any information with "sufficient indicia of reliability to support its probable accuracy" may be considered in making the sentencing factfindings, *see* commentary to Guidelines § 6A1.3, there must be "an acceptable evidential basis" for the court's factfindings at the sentencing hearing. *See United States v. Johnson,* 823 F.2d 840, 842 (5th Cir.1987).

 Ricardo contends that the probation officer's conclusions in the presentence report were drawn largely from statements made by the co-conspirators, which, because they were not before the district court, were unreliable. However, we find it unnecessary to determine the reliability of these statements, since we hold that the court had a sufficient evidentiary basis for finding that the defendant had a leadership role in the operation based upon his statements made in open court at the plea hearing[1] and upon the transcripts of covert tape recordings that were before the district court at the sentencing hearing.

Section 3B1.1(a) provides, "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." At the plea hearing, Ricardo Rodriguez and his brother Angel admitted the accuracy of the prosecutor's description of the events, which ended with the assertion that the brothers were "principals in the possession with the intent to distribute the cocaine that was here and were making an effort to make it back up to New York."

Ricardo also agreed that the court's statement of facts was true when it recited,

[Y]ou and your brother and Mr. Orozco possessed this cocaine together and it that was your desire to get the cocaine that showed up in Corpus Christi, that was brought to Corpus Christi by Mr. Demetrio Valencia. And it was your desire to get a part of this cocaine through Mr. Orozco to New York. And Mr. Berg has told me that they were arrested when they came to Corpus and that they were intercepted and that Mr. Oswaldo Orozco and his wife, Sandra, accuse you of being the New York end of the cocaine and that Sandra Orozco called you and asked you for money so that the cocaine could be delivered.

As the court is permitted to make inferences from the facts, and these inferences are factfindings reviewed under a clearly erroneous standard, *see United States v. Mejia–Orosco,* 867 F.2d 216, 220–21 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989), the district court easily could have inferred from the above admissions that Ricardo and perhaps also his brother, as the ultimate purchasers in New York who sent their courier to receive the cocaine from Corpus Christi, were the leaders of the operation at the New York end thereof.

In the secretly-taped conversation between Sandra Orozco (a conspirator who had agreed to cooperate with the government) and Angel, where Sandra requested that money be sent to her, Angel instructed her to call back in five minutes because "in a minute I'll be talking to my brother and I'll be able to send some money by Western Union." In conversations between Sandra and Franco Vincente, another one of the conspirators, Vincente referred to the courier as "the man that Ricardo sent." Thus, the court could infer that it was Ricardo who ultimately authorized the sending of $400 to Sandra. This is evidence of Ricardo's leadership role in the operation.

---

**1.** The court may consider these statements in making its § 3B1.1 decision. *See Davis,* 868 F.2d at 1391–92.

Moreover, at one point Vincente directed Sandra to call Ricardo and then said that if Ricardo is not there, not to say much "because that Angel talks. . . ." This suggests that it was Ricardo, rather than Angel, who had the most control over the operation. Also, the commentary to section 3B1.1 explains that a criminal activity can have more than one organizer or leader. Hence the district court's finding that Ricardo was a leader or organizer of the criminal activity was not clearly erroneous.

The above-quoted transcripts of the tapes also provide direct evidence that (in addition to Ricardo) Angel, Franco Vincente, and a courier were involved in the criminal activity in which Ricardo was the leader. Based upon the statement of facts presented at the plea hearing that Ricardo accepted as true, Oswaldo Orozco, Sandra Orozco, and Demetrio Valencia were also involved in the criminal activity. Thus, the basis for the district court's factfinding that the criminal activity involved five or more people was not clearly erroneous. Therefore, the district court did not err in finding that Ricardo had an aggravating role in the offense under section 3B1.1(a).

## II.

Ricardo asserts that the district court violated Fed.R.Crim.P. 32 and section 6A1.3 by improperly relying upon the probation officer's report and by not explaining its findings with sufficient specificity. We have held that although specific findings by the district court would be helpful for appellate review, the district court is not required under section 3B1.1 to make any finding of fact more specific than that the defendant was a "leader" or "organizer." *Mejia–Orosco*, 867 F.2d at 221–22.

■ Ricardo argues that, while the trial court's findings are reviewed only for clear error, the trial court has no discretion with regard to whether to make specific findings of fact. However, in *United States v. Burch*, 873 F.2d 765, 767–68 (5th Cir.1989), we stated,

The method by which the district court chooses to address the requirements of Rule 32(c) and guideline 6A1.3(b) in a given case is for that court to select. As the guidelines direct, '[t]he sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law.' Sentencing Guideline 6A1.3, commentary.

In *Mejia–Orosco*, 867 F.2d at 221, we discussed the proper approach for a district court making a section 3B1.1 determination:

[W]e 'decline to require the judge to write out' more specific findings about the defendant. We recognize that so formal a requirement would interfere with the smooth operation of the sentencing hearing. In some instances, what is necessarily a 'judgment call' may not be susceptible of particularization.

Therefore, we hold that the decision not to make specific fact-findings under section 3B1.1 is within the discretion of the district court.

■ The court is required to resolve specifically disputed issues of fact if it intends to use those facts as a basis for its sentence. *See* Fed.R.Crim.P. 32(c)(3)(D); *United States v. Hurtado*, 846 F.2d 995, 998 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 163, 102 L.Ed.2d 133 (1988). Ricardo and his attorney never presented any evidence to rebut anything in the PSI. Ricardo specifically challenged only the ultimate factual conclusion of the PSI that he was a leader; he generally objected to all of the underlying facts in the PSI but would not be more specific.

■ Thus, the question we address is whether the district court, without further justification or explanation, can adopt the PSI's facts as they stand, where defendant disputes those facts but provides no rebuttal evidence.[2] Rule 32(c)(3)(D) does not obligate a district court to make a finding or determination unless the defendant asserts "with specificity and clarity each factual

---

**2.** We consider the PSI's facts because the district court chose to follow the PSI's recommended

§ 3B1.1(a) adjustment based both upon the PSI's findings and upon the tape transcripts.

mistake" of which he complains. *See Hurtado*, 846 F.2d at 998. From *Mejia–Orosco* and *Hurtado* then, we conclude that, as Ricardo presented no rebuttal evidence, the district court had discretion to adopt the PSI's facts without more specific inquiry or explanation, provided that those facts had an adequate evidentiary basis. *See Johnson*, 823 F.2d at 842.

Ricardo notes that the evidence supporting the facts in the PSI was largely co-conspirators' testimony that was never before the court and that thus the reliability of the evidence could not be evaluated. However, as explained in part I above, the tape transcripts and Ricardo's admissions at the plea hearing provide sufficient evidence, without considering anything not before the court, to support most of the facts in the PSI that suggest that Ricardo had an aggravating role in the offense.

■ Moreover, the defendant has the burden of showing that the information upon which the district court relied in sentencing was materially untrue. *See United States v. Flores*, 875 F.2d 1110, 1113 (5th Cir.1989). Although the probation officer may have written the PSI based upon materials not before the court and did not use the transcripts, the probation officer later testified, after reviewing the material therein, that the transcripts would not have changed any of his findings. Therefore, there was both sufficient evidence before the court on which it could base its decision to adopt the PSI's findings and no conflict with other evidence. Hence, the district court did not violate rule 32(c)(3)(D).

The PSI, which recommended the four-level increase for Ricardo's aggravating role in the offense, together with the government's notice of intent to use the transcripts at the sentencing hearing, satisfied the requirements of guideline section 6A1.3(b) by providing Ricardo with notice of the court's "tentative findings" and "a reasonable opportunity for the submission of oral or written objections before imposition of sentence." The court's providing Ricardo with an opportunity to present objections to the PSI's findings and supporting evidence in his behalf at the sentencing hearing also satisfied the requirements of Fed.R.Crim.P. 32(a)(1) for "an opportunity to comment [at the sentencing hearing] upon the probation officer's determination and on other matters relating to the appropriate sentence." *See United States v. Michael*, 894 F.2d 1457, 1461–62 (5th Cir. 1990).

■ Ricardo contends that the court denied him his right to confront witnesses, as the evidence on which the probation officer relied in making his presentence report was never disclosed to Ricardo or his attorney. However, a defendant's confrontation rights at a sentencing hearing are severely restricted. A court may rely upon uncorroborated hearsay testimony, *see United States v. Cuellar–Flores*, 891 F.2d 92, 93 (5th Cir.1989), and even on an out-of-court statement by an unidentified informant (at least where there is good cause for not allowing confrontation and there is some additional corroboration of the statement). *See United States v. Fatico*, 579 F.2d 707, 711–13 (2d Cir.1979), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980). In this case, the findings of the PSI, which the court adopted, were supported not only by out-of-court statements by unknown parties but also by evidence that was known and subject to challenge by Ricardo (and in fact Ricardo's counsel did specifically contest the translations of the tapes).[3]

## III.

■ Finally, Ricardo claims that he was denied effective assistance of counsel in

---

3. This situation is distinguishable from that in *Michael*. There, where the trial court based its departure from the guidelines upon two predicate factual findings, we remanded because one of those findings was unsupported by the record. In the instant case, on the other hand, the court never explicitly relied upon evidence not before the court to support its decision to adopt the PSI's findings. Here the record provides adequate support for the court's factual findings. As the court need not explain with specificity all of its findings, *see Mejia–Orosco*, 867 F.2d at 221, a court's unexplained finding cannot be defeated merely because, in addition to reliable supporting evidence, there also exists some less reliable evidence to support its finding.

regard to sentencing. The four most serious deficiencies Ricardo alleges with regard to his representation at the trial level are (1) his counsel's failure to prepare any written objections to the PSI, despite the court's specific suggestion that counsel do so; (2) counsel's failure to interview any witnesses or gather any evidence for presentation at the sentencing hearing; (3) counsel's statement to the trial court that counsel did not expect the court to adopt the PSI, even when counsel had failed to prepare any specific challenges to it; and (4) counsel's failure to file Ricardo's appeal properly.

The ineffective-assistance-of-counsel claim was not made in the court below.

> It is settled in this circuit that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court, since the district court has had no opportunity to develop the record as to the merits of the allegations. We decide such issues on direct appeal only in those rare cases where the record is sufficiently complete to enable us to fairly evaluate the merits of the claim.

*United States v. Ugalde*, 861 F.2d 802, 804 (5th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 2447, 104 L.Ed.2d 1002 (1989).

To prevail on an ineffective assistance of counsel claim, the defendant must show not only "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," but also that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). On the record before this court, Ricardo has failed to show that different performance by his trial counsel would likely have changed his sentence. Ricardo complains primarily that his trial counsel failed to rebut the information in the PSI; however, Ricardo has not as yet shown that there is any evidence with which to do so. Therefore, we decline to pass upon the ineffective-assistance-of-counsel claim. We do so without prejudice

to Ricardo's right to raise the issue in a habeas corpus proceeding pursuant to 28 U.S.C. § 2255.

AFFIRMED.